**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES R. CORRIGAN,
Plaintiff-Appellant,

v.

No. 97-1511

WILLIAM J. PERRY, Secretary,
Department of Defense,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CA-96-595-2)

Argued: October 31, 1997

Decided: March 24, 1998

Before RUSSELL* and LUTTIG, Circuit Judges, and CAMPBELL,
Senior Circuit Judge of the United States Court of Appeals for the
First Circuit, sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Campbell wrote the
opinion, in which Judge Luttig joined.

_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel, pursuant to 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** Jack Elmer Ferebee, JACK E. FEREBEE, P.C., Virginia Beach, Virginia, for Appellant. George Maralan Kelley, III, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

CAMPBELL, Senior Circuit Judge:

Charles R. Corrigan ("Corrigan") brought this action against William J. Perry, Secretary, Department of Defense (the "Department"), alleging that the Department discriminated against him in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act" or "the Act"), 29 U.S.C. § 701 et seq. (1985 & Supp. 1997). Corrigan claimed that, although he was disabled and unable properly to perform his job at the Department, the Department refused to provide him with a "reasonable accommodation." On April 10, 1997, the district court awarded summary judgment in favor of the Department, holding that Corrigan had failed to demonstrate that he had a disability. Corrigan appealed. We affirm.

I. BACKGROUND

Because we are reviewing the district court's grant of a motion for summary judgment, we recite the facts in the light most favorable to the party opposing the motion, Corrigan. See Kimmel v. Seven-Up Bottling Co. of Elkton, Inc., 993 F.2d 410, 412 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Since 1988, Corrigan has held the position of Material Handler Work Leader. His job description called for him to lead five to ten

2

warehouse workers. His duties included, <u>inter alia</u>: passing instructions from his supervisor to the workers; getting the work started; working along with the other employees and setting the pace; training new employees; demonstrating proper work methods; obtaining the necessary materials and tools; receiving issue documents; receiving, storing, and issuing items; and checking shelf-life dates and damaged packages to ensure that the items were fit for use. In addition, the job description required the holder of Corrigan's position to lift items weighing up to seventy pounds and to be physically capable of operating industrial equipment.

As a result of on-the-job injuries that occurred between 1986 and 1988, Corrigan experienced back and neck pain. On April 24, 1992, Corrigan underwent surgery for the fusion of two cervical discs. His surgeon advised him to avoid lifting items weighing more than twenty-five pounds and to refrain from operating a forklift. Corrigan was placed on "light duty" for a short time after his surgery, but remained in his position as Work Leader. Even with his limitations, Corrigan received satisfactory performance reviews from his supervisors.

In 1992, the Department began to downsize its workforce: employees who left or retired were not being replaced and no new positions were being created. Corrigan's supervisors told him that, in view of the diminishing number of positions available, a formal request for an accommodation might result in adverse consequences such as losing his job, being forced into taking a lower-paying job, or being forced to retire.

On February 9, 1993, Corrigan underwent additional neck surgery for the fusion of cervical disks. Corrigan's doctor permitted him to return to work on March 8, 1993, but cautioned that Corrigan should not lift more than twenty-five pounds, not lift items above shoulder level or extend his head and neck frequently, and not operate a forklift. Despite these limitations, Corrigan continued in his position as a Work Leader.

Corrigan contends that his supervisors assigned him tasks making it necessary for him to disregard his physician's medical restrictions. Corrigan concedes, however, that his supervisors never insisted that

3

he should do things his doctors disallowed: when he reminded them that a task exceeded his restrictions, they would suggest that he get someone to help or do only what he could do safely. On the occasions when Corrigan refused to move materials that exceeded his limitations, Corrigan's supervisor moved the materials himself. Corrigan continued to receive satisfactory performance reviews.

Corrigan's physical condition deteriorated after his return to work. On October 28, 1993, after several requests for an accommodation that would not require him to violate his medical limitations, Corrigan was given a written light duty assignment. This assignment was back-dated to March 8, 1993, and was scheduled to end in January 1994.

On November 9, 1993, Corrigan submitted a form entitled "Request for Special Benefits for Health Reasons," asking that he be placed on limited duty for a period not to exceed thirty days. Corrigan admits that the accommodation that he requested via this form described the work that he had been doing since the time of his first surgery and that he continued to do until he left his job in 1995.

This form also contained a question, directed at Corrigan's supervisors, requesting information on what efforts the supervisors had "made to accommodate [Corrigan] (including temporary accommodations, i.e., light duty[)]." In response, Corrigan's supervisors wrote:

> Employee continue[s] to do all phases of his job d[e]scription without the driving part & heavy lifting. Note employee wants to go back to full duty[, b]ut I won't let him until he get[s] the Doctor release.

The Department did not fill out Part IV of the form, however, which is entitled "Agency Certification of Accommodation Efforts."

Corrigan's doctor continued the medical restrictions on Corrigan's ability to work in an April 22, 1994 letter. In June 1994, the Department asked Corrigan's doctor whether Corrigan's condition was permanent.[1] Corrigan's doctor replied that it was. Although the

_____

[1] Corrigan notes that, presumably in connection with writing the letter to Corrigan's doctor, a human resources officer asked Corrigan's super-

4

Department had a policy of initiating a formal accommodation procedure if an employee's limitations were permanent, no such procedure was initiated for Corrigan.**2**

Corrigan asserts that he submitted a written request for a permanent accommodation to the employee relations specialist in the Department's Human Resources office shortly after finding out that his condition was permanent. It appears that Corrigan is referring to the form that he submitted on or about June 26, 1995, over a year after his doctor indicated that his condition was permanent and several months after he had walked off his job.**3** Corrigan's doctor never recommended that Corrigan be reassigned to another position.

In September of 1994, Corrigan was transferred to the Naval Shipyard F-Condition Warehouse. Corrigan was the highest ranking employee at the shipyard site. Corrigan's third-line supervisor testified that, although this transfer was not a medical accommodation, he transferred Corrigan to the shipyard because the work was lighter and because Corrigan was dependable and had good computer skills.**4**

_____

visors whether Corrigan was on informal light duty status. In response, the supervisors "didn't indicate . . . that they were doing it [o]n an informal basis. They just indicated [Corrigan] was essentially performing his duties and they were able to basically get him to do his work."

**2** Corrigan's third-line supervisor testified that he did not remember being advised that Corrigan's condition was permanent.
**3** The evidence indicates that Corrigan did not submit a written request for a permanent accommodation until after he left the job. In a letter dated May 15, 1995, the Department informed Corrigan that he had never filed the written documentation required to obtain a medical accommodation with any of his supervisors or the civilian personnel department. Corrigan responded via a letter dated June 27, 1995, in which he asserted that "[n]o supervisor or any one in personnel told me that I had to fill out certain forms for an accommodation. Why did they not tell me this 3 years ago?" Other than the June 26, 1995 request, the record contains no written requests from Corrigan for a permanent accommodation.

**4** Another worker overheard a supervisor claiming that Corrigan had been transferred to the shipyard as a medical accommodation.

5

In the course of his work at the shipyard, Corrigan lifted heavy boxes and operated industrial machinery. One of Corrigan's co-workers testified that it was necessary for Corrigan to exceed his medical limitations in order get the work done in a timely manner. Corrigan testified, however, that he was never ordered by a supervisor to work outside of his medical restrictions.

On February 7, 1995, Corrigan's immediate supervisor adminis-tered Corrigan's mid-year review. When Corrigan indicated his belief that he was on light duty, the supervisor expressed surprise. The supervisor called a halt to the meeting and consulted with Corrigan's third-line supervisor, who told Corrigan's immediate supervisor that Corrigan was "not officially on light duty," but that Corrigan was "there at the shipyard so he can do what he can do." Corrigan's imme-diate supervisor was instructed to "grade [Corrigan] on what he does."

When the mid-year performance review resumed, Corrigan's supervisor told Corrigan that he was not officially on light duty. Cor-rigan became extremely distraught. Corrigan's supervisor said that "they were accommodating [Corrigan] over at the Shipyard so [he] could be as productive as possible with [his] disability." Corrigan walked out of the mid-year review and never returned to his job.

Corrigan immediately descended into a deep depression that led to his hospitalization for psychiatric treatment. He submitted a request for a permanent accommodation on June 26, 1995, but the Depart-ment has not acted on this request because "of the medical reality (which apparently continues through to today), that there can be no accommodation of one who cannot do any work." Appellee's Brief at 19.

In October 1996, the Department administratively terminated Cor-rigan. As a result of Corrigan's workers' compensation claims, Corri-gan has received since February 13, 1995, wage benefits in the amount of 3/4 of his average weekly salary and payment of his medi-cal bills. Corrigan remains on total disability.

On June 11, 1996, Corrigan brought suit in the federal district court alleging that the Department failed to provide a reasonable accommo-dation for a known disability. The Department filed a motion for sum-

6

mary judgment on February 25, 1996, in which it alleged: (1) that Corrigan's inability to lift more than twenty-five pounds is not a disability as a matter of law under Williams v. Channel Master Satellite Systems, Inc., 101 F.3d 346 (4th Cir. 1996); and (2) that the Department provided a reasonable accommodation. The district court granted the Department's motion for summary judgment by memorandum order relying principally on Corrigan's failure to establish that he was disabled, in the sense of having a physical impairment that substantially limits one or more of his major life activities, to wit, working. Cf. 29 U.S.C. § 706(8)(B). The court noted that the Williams court had held "as a matter of law, that a twenty-five pound lifting limitation . . . does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." Williams, 101 F.3d at 349 (citation omitted). The court also held that Corrigan had not submitted evidence regarding the factors discussed in Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986), namely he did not provide proof that his particular impairment was a barrier to employment generally, and that therefore summary judgment was appropriate. See Bolton v. Scrivner, Inc., 36 F.3d 939, 944 (10th Cir. 1994) (affirming a grant of summary judgment against a party who failed to produce any evidence of "a significant restriction in his `ability to perform either a class of jobs or a broad range of jobs in various classes'" (quoting 29 C.F.R. § 1630.2(j)(3)(i))).

Because of its finding that Corrigan was not an individual with a disability, the district court declined to rule on whether the employer here had made reasonable efforts to accommodate Corrigan's medical restrictions. The court nonetheless, said "it[was] inclined to agree . . . that the Department had provided reasonable accommodation by affording plaintiff the opportunity to assign certain work to his subordinates."

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. See Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990) (citations omitted). We apply the same standard as the district court: whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

7

a judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, we interpret the record in the light most favorable to the nonmoving party for purposes of evaluating the appropriateness of summary judgment. See Kimmel, 993 F.2d at 412 (citing Anderson , 477 U.S. at 255).

Nevertheless, summary judgment is appropriately awarded against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Further, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted). Disputed facts that do not affect the outcome of the suit do not preclude summary judgment. See Anderson, 477 U.S. at 248. We will affirm a grant of summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." Id. at 252. Lastly, we need not constrain ourselves to the grounds relied upon by the district court, but may affirm if we perceive viable alternative grounds for summary judgment. See Charbonnages de France v. Smith, 597 F.2d 406, 416 & n.9 (4th Cir. 1979).

III. DISCUSSION

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a) (Supp. 1997). The Act imposes on agencies a duty to provide "reasonable accommodations" to a disabled employee who could perform a job's essential functions with such accommodations, unless the provision of accommodations would place an "undue hardship" on the agency. 42 U.S.C. § 12112(b)(5)(A).[5]

_____

[5] This principle is stated most clearly in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., but also appears in the appropriate EEOC Regulations. See 29 C.F.R.§§ 1614.203(c)(1), 1614.102(a)(8). We recently noted that, whether an employee sues the federal government under the Rehabilitation Act or a private employer under the ADA, the "substantive standards for determining liability are the same." Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995) (citing 29 U.S.C. § 794(d)).

A. <u>Was Corrigan Disabled</u>?

The threshold requirement for coverage under the Act is that the plaintiff be an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a); <u>see also Gupton</u> v. <u>Virginia</u>, 14 F.3d 203, 205 & n.2 (4th Cir. 1994). The Act defines the term "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). EEOC Regulations state that the term "major life activities" refers to basic functions, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1996). A plaintiff must demonstrate that, due to a physical or mental impairment, one of these major life activities is "substantially limit[ed]," which means that the plaintiff is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 U.S.C. § 1630.2(j). Thus, the Act covers an individual only if that individual is unable to perform or significantly restricted in his ability to perform a major life function compared to the average person.

The parties agree that at relevant times Corrigan was subject to several medical restrictions: he should not lift more than twenty-five pounds, he should not work above his head or extend his head and neck frequently, and he should not drive a forklift. Corrigan contends that these limitations rose to the level of a "disability" for purposes of the Rehabilitation Act.

Corrigan's claim runs squarely into this Circuit's recent <u>Williams</u>

9

holding, supra. This court held there that a plaintiff who was told by her doctor to refrain from lifting more than twenty-five pounds as well as to avoid pushing or pulling heavy objects was not disabled under the ADA. See Williams, 101 F.3d at 349. The opinion in Williams reflected the Act's exclusion of less serious impairments from the category of disabilities. See 29 C.F.R. § 1630.2(j) app. ("Many impairments do not impact an individual's life to the degree that they constitute disabling impairments"). **6** The Act protects only people whose impairments are so severe that they"significantly restrict[ ]" a person's ability to perform major life activities when compared to the abilities of "the average person in the general population." 29 C.F.R. § 1630.2(j)(ii). In Williams, we held, "as a matter of law, that a twenty-five pound lifting limitation-- particularly when compared to an average person's abilities -- does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." Williams, 101 F.3d at 349 (citation omitted) (emphasis added).

Corrigan argues that his medical restrictions are more severe than Williams's limitations because he may not operate a forklift or work frequently above his head. Like the district court, we conclude that these additional restrictions are insufficient to remove Corrigan from the rule laid down in Williams. Employees with basic lifting restrictions often have associated limitations that do not materially alter the character of the limitation. Williams herself, besides the twenty-five pound lifting limitation, could not push or pull heavy objects. See also Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997) (denying disability status to a radiology technician who could not lift more than twenty-five pounds or push heavy equipment); McKay v. Toyota Motor Mfg., U.S.A., 110 F.3d 369, 373 (6th Cir. 1997) (denying disability status to a plaintiff who could not lift more than twenty pounds, use vibrating equipment, or make repetitive use of her right hand); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995)

_____

**6** The EEOC interpretive guidelines (the "EEOC Guidelines"), in which the statement regarding less serious impairments appears, are not binding on this court but "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (internal quotation marks and citations omitted).

10

(denying disability status to a plaintiff who could not lift more than twenty pounds, work in a cold environment, or work with meat products).

At some point, the question whether additional restrictions combine with a lifting restriction to form a disability becomes an question of fact. Cf. 29 C.F.R. § 1630.2(j) app. ("[A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs."). Corrigan, however, has not tendered any evidence on the effects of the lifting and associated restrictions upon his eligibility for other jobs that may be available. The district court laid particular emphasis on this, noting his failure to provide evidence on three factors set out in Forrisi, 794 F.2d at 933, to wit, "[1] the number and type of jobs from which the impaired individual is disqualified, [2] the geographical area to which the individual has reasonable access, and [3] the individual's job expectations and training." See also Bolton, 36 F.3d at 943-44.

Accordingly, both because of our holding in Williams relative to the inability to lift more than twenty-five pounds, and because of Corrigan's failure to present any evidence as to how his restrictions may have affected his eligibility for other jobs, we find that Corrigan did not create a genuine issue of material fact concerning whether he was disabled under the Act, making summary judgment appropriate. See Williams, 101 F.3d at 350.

B. Was Corrigan Denied a Reasonable Accommodation?

Besides not establishing that he was disabled within the Act, Corrigan's case has another flaw: Corrigan's tendered evidence was insufficient to show that he requested and was then denied a reasonable accommodation.

This latter point may seem surplus given Corrigan's failure to establish disability. We discuss it, however, as it rebuts a contention that Corrigan raised in his complaint and now mentions on appeal, namely that, even if not disabled, he was wrongfully treated because the Department perceived he was disabled and discriminated against

him. See 29 U.S.C. § 706(8)(B) (including within the definition of "individual with a disability" those who are"regarded as" having a disability). Corrigan asserts that the district court improperly decided this issue by entering summary judgment without hearing and opportunity for argument. Assuming arguendo that the district court erred, and assuming also that Corrigan has preserved this issue, any error below is rendered harmless by Corrigan's failure to establish that he was denied a reasonable accommodation. We turn to that matter.

The EEOC Guidelines place the burden of requesting an accommodation on the disabled employee. See 29 C.F.R. § 1630.9 app. ("In general, . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."). The parties dispute whether the evidence indicates that Corrigan made an appropriate request for an accommodation. Corrigan contends that he repeatedly alerted his supervisors informally of his need for an accommodation; the Department argues that Corrigan failed to take any formal steps whatever to ask for an accommodation by reassignment for fear that he would be downgraded. The record is clear that Corrigan never filed a written request for a permanent accommodation with the Department's personnel office until after he had walked off of the job and was no longer able to work. Although Corrigan says he did not realize that he needed to submit a written request in order to obtain an accommodation, he had submitted in 1993 a request for a temporary accommodation on the same form that he would have used to request a permanent accommodation.

We need not decide, however, whether Corrigan's alleged informal complaints to his supervisors suffice to create an issue of fact over whether Corrigan submitted an appropriate request for an accommodation. Even if Corrigan's statements to his supervisors can qualify as proper requests for an accommodation, the record compels the conclusion that the Department's informal policy allowing Corrigan to work within his medical limitations satisfied the legal requirement that the Department provide a reasonable accommodation.

The EEOC Regulations accompanying the Rehabilitation Act require an agency to "make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps unless the agency can demon-

12

strate that the accommodation would impose an undue hardship on the operations of its program." 29 C.F.R. § 1614.203(c)(1); see also 29 C.F.R. § 1614.102(a)(8) (same, in the Regulations that govern Federal Sector Equal Employment Opportunity). According to the Regulations, a reasonable accommodation may include, but is not limited to:

> (i)  Making facilities readily accessible to and usable by individuals with handicaps; and

> (ii) Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

29 C.F.R. § 1614.203(c)(2).

An employer need not alter the "essential functions" of a job in order to accommodate a disabled employee. 29 C.F.R.§ 1630.2(o) app. "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires."[7] 29 C.F.R. § 1630.2(n). If a disabled person cannot perform a job's essential functions even with a reasonable accommodation, the Regulations establish a policy in favor of reassignment, including reassignment to a lower grade position if necessary. See  29 C.F.R. § 1614.203(g); see also § 1614.102(a)(9).

By tailoring Corrigan's job responsibilities to fit his medical restrictions, the Department complied with the demands of the Act. The Department, to be sure, may have gone further than required in

_____

[7] Whether a function is "essential" to a specific job is a fact-specific inquiry; the EEOC Regulations list a number of considerations that may indicate whether a function qualifies as essential. See 29 C.F.R. § 1630.2(n). We need not decide whether lifting and operating a forklift were essential to Corrigan's position as a work leader because neither party has raised the issue. Even assuming they could be considered essential, Corrigan's supervisors, by waiving them in his case, could create a job-restructuring constituting an accommodation.

13

its efforts to accommodate Corrigan in that particular position. By relieving Corrigan of the necessity to lift and operate a forklift, the Department arguably abrogated several of the essential functions of a work leader. Still, the undisputed evidence establishes that, although Corrigan remained in a position that demanded on paper that he exceed his medical restrictions, his supervisors never ordered him to do so. Rather, Corrigan was told to respect his medical limitations and was evaluated on the basis of the work that he could actually perform, not on his job description. Under this informal job restructuring, Corrigan received consistently satisfactory performance reviews. In pursuing this policy, the Department satisfied its duties under the law.

Corrigan argues that he was denied an <u>effective</u> accommodation, and that under the policies discussed above he should have been given a job transfer, even though he himself took no formal steps to request one. We cannot agree.

First, there is no evidence that the Department's accommodation was ineffective. Although Corrigan has submitted affidavits to support his assertion that he was compelled to exceed his abilities, he is unable to indicate the source of that compulsion. Corrigan received consistently satisfactory performance ratings and admits that he was never told to work outside of his limitations by any other Department employee or supervisor. When Corrigan exceeded his medical limitations, it was because he held himself to a standard that his doctors had forbidden and his supervisors did not demand. Corrigan's refusal to accept the conditions of an accommodation did not impose an additional duty upon the employer. <u>Cf.</u> 29 C.F.R.§ 1630.9(d) (providing that if a disabled employee refuses to accept a reasonable accommodation, that employee is no longer considered to be"a qualified individual with a disability"). Corrigan admitted that the duties that he performed during the entire period of his employ following his first surgery conformed to the accommodation that he had in mind. On these facts, and given that and other admissions, we cannot say that the Department's chosen if informal accommodation was ineffective.

Second, even assuming Corrigan's requests to supervisors for an accommodation can be viewed as requesting transfer to another job, he was not entitled to insist upon a transfer in preference to the restructuring of his current job. Although an employee's preference

14

for one accommodation over another must be taken into account, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. § 1630.9 app. Indeed, the accommodation chosen by the employer need not be the "`best' accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated." Id. Any reasonable accommodation by an agency is sufficient to satisfy its legal obligation. See Schmidt v. Methodist Hosp. of Indiana, Inc., 89 F.3d 342, 344-45 (7th Cir. 1996). Thus, Corrigan would not have been entitled to insist upon a particular accommodation, such as reassignment, even had he made this desire clear.

We hold that the undisputed facts in this record are insufficient to establish that Corrigan was disabled under the Rehabilitation Act. We further hold that, even if the Department perceived Corrigan to be disabled, the record indicates that the Department provided Corrigan with a reasonable accommodation.

AFFIRMED