**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LINDA WILLIAMS,
Plaintiff-Appellant,

v.

CHANNEL MASTER SATELLITE
SYSTEMS, INCORPORATED; CHANNEL
MASTER COMMUNICATIONS,

No. 96-1072

INCORPORATED; AVNET,
INCORPORATED,
Defendants-Appellees.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; EQUAL EMPLOYMENT
ADVISORY COUNCIL,
Amici Curiae.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CA-95-108-5-BO)

Argued: September 23, 1996

Decided: November 27, 1996

Before HALL, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by published per curiam opinion. Judge Williams concurred
in part and wrote a separate concurring opinion.

_____

**COUNSEL**

**ARGUED:** Burton Craige, PATTERSON, HARKAVY & LAW-RENCE, L.L.P., Raleigh, North Carolina, for Appellant. Robert John Gregory, EQUAL EMPLOYMENT OPPORTUNITY COMMIS-SION, Washington, D.C., for Amicus Curiae EEOC. Martin Nesbitt Erwin, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro, North Carolina, for Appellees. **ON BRIEF:** John J. Korzen, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro, North Carolina, for Appellees. C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTU-NITY COMMISSION, Washington, D.C., for Amicus Curiae EEOC. Douglas S. McDowell, Ann Elizabeth Reesman, Ellen Duffy McKay, MCGUINNESS & WILLIAMS, Washington, D.C., for Amicus Curiae Advisory Council.

_____

**OPINION**

PER CURIAM:

Linda Williams appeals the district court's grant of summary judgment to her employer on her claims for employment discrimination under the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101 - 12213 (1995), and the North Carolina Handicapped Persons Protection Act (NCHPPA), N.C.G.S. § 168A (Michie 1987), and for wrongful discharge under state common law. See Williams v. Avnet, 910 F. Supp. 1124 (E.D.N.C. 1995). We affirm, albeit on narrower grounds than those on which the district court relied.

I.

The facts in this case are largely undisputed. In 1985, Linda Williams began working for Avnet, Inc.'s subsidiary, Channel Master Communications, in its Smithfield, North Carolina plant. In March 1992, Williams injured her neck and back in an automobile accident unrelated to work. Following the accident, Williams was unable to work for several months. During this period she visited her doctor

2

every three to four weeks, each time receiving a note excusing her from work until the next appointment. After each visit, Williams submitted the doctor's note to the plant nurse, who extended her disability leave accordingly.

In September 1992, Williams' orthopedist told her that she could return to work, with the restrictions that she refrain from lifting more than 25 pounds and pushing or pulling heavy objects. The doctor rated her impairment as a 5% permanent partial disability of the back. Despite her doctor's rating, it appears that neither Williams nor her employer knew at that time that her disability would be permanent.

When Williams received medical permission to work, she asked her employer, Channel Master, if she could return to the plant in any job position that fit her medical restrictions, even in a job at less pay. A personnel coordinator informed her that she would not be permitted to return to work until her doctor released her from "any and all restrictions" and she could perform all the duties she had before the accident. Later, discovery revealed that there were several job vacancies at the plant during this period of time that would have satisfied Williams' medical restrictions. After her employer refused to reassign her to lighter duty work, Williams suggested other accommodations that Channel Master could make that would enable her to continue to perform the job she had held at the time of the accident. Channel Master refused to accommodate Williams' condition in any way, and on October 2, 1992, after she had received six months of disability leave, the company terminated her.

Williams then filed a timely charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC investigated her claim and determined that Channel Master had violated the ADA by refusing to accommodate Williams' disability, by discharging her due to that disability, and by its policy of terminating temporarily disabled employees who can not return to work after six months.

The district court granted summary judgment to Channel Master finding that as a matter of law, Williams was not entitled to relief under the ADA, NCHPPA, or on her common law claim of wrongful termination. The appeal followed.

II.

To establish a cause of action under the ADA, a plaintiff must demonstrate: "(1) that [s]he has a disability; (2) that [s]he is otherwise qualified for the employment or benefit in question; and (3) that [s]he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." Doe v. University of Maryland Medical Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995); Tyndall v. National Educ. Ctrs., 31 F.3d 209, 212 (4th Cir. 1994); White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995).**1**

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA regulations and EEOC interpretive guidelines list a number of major life activities. See 29 C.F.R. § 1630.2(i) (1996) (caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working); 29 C.F.R. Pt. 1630, App. § 1630.2(i) (1996) (above activities plus sitting, standing, lifting and reaching).**2** Williams

_____

**1** The district court improperly relied, Williams, 910 F. Supp. at 1131, on a proof scheme based on the approach that the Supreme Court took in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). By readjusting burdens between the plaintiff and defendant, the McDonnell Douglas test is designed to circumvent a factual dispute over the reasons for discharge, and is therefore most appropriate when "the defendant disavows any reliance on discriminatory reasons for its adverse employment action." Ennis v. National Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995); Barth v. Gelb, 2 F.3d 1180, 1185-87 (D.C. Cir. 1993), cert. denied, 114 S.Ct. 1538 (1994). Here, the parties do not dispute that the reason that Channel Master did not permit Williams to return to her job was that her back injury prevented her from performing her assigned tasks without accommodation. The McDonnell Douglas "inferential proof scheme" is not appropriate when, as here, the reason for discharge is undisputed.

**2** The EEOC interpretive guidelines, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (citations and internal quotation marks omitted).

asserted that both lifting and working constituted major life activities that her impairment substantially limited.

The district court erred in two respects in analyzing whether Williams had established that she was disabled for purposes of the ADA. First, the court erred in failing even to address Williams' asserted lifting limitation. Secondly, and perhaps more fundamentally, it erred in suggesting that working is <u>not</u> a major life activity, and that the general foreclosure test must be used to determine if any other major life activity is "substantially limited." <u>See Williams</u>, 910 F. Supp. at 1131-33, 1136-37. The district court improperly described the regulatory language discussing working as a major life activity as "superfluous" and thus declared that "[w]hile some courts might entertain claims under the `major life activity' of `working,' this Court does not." <u>Id.</u> at 1136. In fact, working is a major life activity, <u>see Gupton v. Virginia</u>, 14 F.3d 203, 205 (4th Cir. 1994) (Rehabilitation Act); <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F.3d 723, 724-27 (5th Cir. 1995), and the general foreclosure test applies only to claims brought under the major life activity of working. <u>See Gupton</u>, 14 F.3d at 205 (applying general foreclosure test only to the major life activity of working); 29 C.F.R. § 1630.2(j)(3) ("With respect to the major life activity of <u>working</u>, the term <u>substantially limits</u> means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . .") (emphasis in original).

However, Williams nonetheless failed to establish that she had a disability sufficient to trigger the ADA. To determine if an employee is disabled under the ADA, a court must evaluate not just whether an employee is restricted but whether she is "[s]ignificantly restricted" in performing a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). A court may also consider the "nature and severity of the impairment," its "duration or expected duration" and any "permanent or long term impact." 29 C.F.R. § 1630.2(j)(2). Moreover, when the major life activity at issue is working, the "inability to perform a single, particular job does not constitute a substantial limitation;" in this circumstance "substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad

5

range of jobs in various classes . . . ." 29 C.F.R. § 1630.2(j)(3) (emphasis omitted).

Like the Eighth Circuit, we hold, as a matter of law, that a twenty-five pound lifting limitation -- particularly when compared to an average person's abilities -- does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity. See Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311, 1319 (8th Cir. 1996) (twenty-five pound lifting restriction did not "significantly restrict" major life activities).**3**

Even if an individual demonstrates she is disabled, the ADA requires her to establish that, "with or without reasonable accommodation, [she] can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8). The employer must arrange "reasonable accommodation" unless doing so imposes an "undue hardship." 42 U.S.C. § 12112(b)(5). In determining whether the failure to accommodate Williams was reasonable, the district court deferred almost entirely to Channel Master's judgment. The court held, as a matter of law, that if a proposed accommodation was not "obviously reasonable," or its reasonableness "is a matter of some serious dispute, courts should defer to the employer's business expertise." Williams, 910 F. Supp. at 1133. The employer's point of view should define "reasonableness," the district court explained, because otherwise the determination of what is reasonable would "authorize[ ] the reviewing court to engage in a subjective, legislative exercise." Id.

This approach was misguided. Courts are often asked to define reasonableness in various contexts; the standard of"reasonableness" is empty if "reasonable" means only "the employer's opinion." The district court's approach is particularly inappropriate in the summary judgment context, where a court must view evidence in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654 (1962)). By definition, the determina-

_____

**3** Because we find that Williams does not qualify as a disabled individual under the ADA, we need not reach the district court's holding regarding the legality of the asserted Avnet policy.

6

tion of reasonableness is an <u>objective</u> analysis, not a subjective one dominated by either party's concerns. In assessing objective reasonableness, the governing statute provides guidance. <u>See</u> 42 U.S.C. § 12111(9). It provides that "`reasonable accommodation' may include" a number of listed measures; obviously Congress considered these types of accommodations to be reasonable. Examples in § 12111(9)(B) include "job restructuring, .. . reassignment to a vacant position, [and] acquisition or modification of equipment or devices." Thus, the district court also erred in suggesting that a qualified ADA plaintiff can <u>never</u> rely on reassignment to a vacant position as a reasonable accommodation.**4**

Although the district court erred in its mode of analyzing whether Channel Master's failure to accommodate Williams was reasonable, it nonetheless properly granted Channel Master summary judgment on the ADA claim because Williams failed to establish that she was disabled under the ADA.

III.

The district court also properly rejected Williams' two state law claims.

We note that the standards under the NCHPPA are narrower than under the ADA. <u>See</u> N.C. Gen. Stat. §168A (Michie 1987); <u>Burgess v. Your House of Raleigh, Inc.</u>, 388 S.E.2d 134, 138 (N.C. 1990) ("[T]he North Carolina Act has a more restrictive definition of a `handicapped person' in that it defines `major life activities' more narrowly than the federal act defines the term."). Since Williams is not disabled for the purposes of the ADA, she similarly is not disabled for the purposes of the NCHPPA.

_____

**4** The district court relied on <u>Myers v. Hose</u>, 50 F.3d 278, 284 (4th Cir. 1995), as supporting its conclusion that reassignment to a vacant position can <u>never</u> be a reasonable accommodation in ADA cases. This conclusion is contrary to congressional direction and is in no way required by our <u>Myers</u> decision. <u>Myers</u> noted only that a particular accommodation does not become federally mandated merely because an employer "elects to establish it as a matter of policy." <u>Id.</u>

7

Finally, the district court concluded that Williams could not prevail on her common law claim of wrongful discharge in violation of public policy. The court found that without a legally cognizable disability, Williams could not claim that she was a victim of disability discrimination. We agree.

AFFIRMED

WILLIAMS, Circuit Judge, concurring:

I agree with the majority's reasoning and holding that Linda Williams is not disabled within the meaning of the Americans with Disabilities Act (ADA) and that the district court properly rejected Williams's state law claims. See Majority Op. at 4-6, 7. Having reached those conclusions, I would not reach the issue of reasonable accommodation as discussed in the majority's opinion in dicta on pages 6-7. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11-12 (4th Cir. 1994) (per curiam) (stating that alternative holdings should be avoided).

8