Joyce A. WASHINGTON Plaintiff,

v.

GEORGE G. SHARP, INC., Defendants.

No. CIV. A. 2:00–CV–374.

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 20, 2000.

Jeffrey A. Vogelman, Thomas, Ballenger, Vogelman & Turner, Alexandria, VA, Joe C. Ashworth, Leonardtown, MD, for Plaintiff.

Timothy W. Dorsey, Williams, Mullen, Clark & Dobbins, PC, Virginia Beach, VA, Robert D. Roseman, Williams, Mullen, Clark & Dobbins, PC, Washington, DC, for Defendant.

## OPINION AND ORDER

FRIEDMAN, District Judge.

Plaintiff filed suit in district court alleging that her former employer, Defendant George G. Sharp, Inc. ("Defendant" or "Sharp"), discriminated against her on the basis of her disabled status in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* On October 11, 2000, Defendant moved pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for summary judgment in its favor with respect to Ms. Washington's single claim under the ADA.

The parties have had ample time for discovery, and they have fully briefed the issues raised by the Defendant's motion for summary judgment. For the reasons set forth below, the Court finds that Defendant's motion for summary judgment is well taken, and said motion hereby is **GRANTED**.

### I. Factual and Procedural Background

Drawing all reasonable inferences in favor of Ms. Williams, the following is a summary of the facts of the case as they appear in the record.

Sometime in 1993, Plaintiff was involved in an automobile accident in which she suffered an injury to her back. Following the accident, Ms. Washington received treatment for her back injury from a chiropractor who placed a thirty-pound lifting restriction on the Plaintiff. Ms. Washington testified in deposition that her chiropractor did not place a time limit on this lifting restriction and that she adheres to the restriction to the present day because she continues to suffer back pain. Washington Dep., at 41:8–20. Prior to her em-

ployment with Sharp, most of Ms. Washington's work experience was in sales or in some variety of administrative position, none of which required significant lifting. Plaintiff's back injury, which has resulted in her being restricted from lifting weights greater than thirty pounds, is the alleged disability that forms this basis of Plaintiff's ADA claim.[1]

At all times relevant to this action, Plaintiff's husband was a serviceman in the United States Navy. In or about August 1995, Plaintiff and her husband relocated to Sicily, Italy upon his assignment to the Sigonella Naval Air Station ("Sigonella"). Plaintiff describes Sigonella as an isolated location with few employment opportunities for military dependents whose spouses are stationed there. Among the few jobs available in Sigonella were those offered by Sharp, which from 1991 through September 30, 1997, was a sub-contractor involved in the provision of logistical support at the Naval Hospital (the "Hospital") and Flight Line Clinic (the "Clinic") at Sigonella.

In January 1996, Plaintiff submitted an application for employment with Sharp. Ms. Washington interviewed with Jean Strumfa, a former supervisor at Sharp, to whom she disclosed her back injury and the thirty-pound lifting restriction. *Id.*, at 35:25–37:4. A form entitled "Interview Questions/Procedures," which both Ms. Washington and Ms. Strumfa signed on January 16, 1996, contains the statement, "You understand that the position offered will entail stooping, lifting (50 lbs.), bending, climbing, etc." *Id.*, at 36:16–37:4; Dkt. No. 7, Ex. 3. Ms. Strumfa, however, made handwritten notes on this form indicating that Ms. Washington had a problem with her back and stating, " * car accident 3 years ago—not to lift over 30 lbs." *Id.*

Sharp initially hired Plaintiff as a word processor at the Hospital. Ms. Washington's duties as a word processor were entirely clerical, and the position had no lifting requirements. In or about June 1996, approximately five months after her hire, Sharp transferred Ms. Washington from her word processing duties to a supply clerk position. Plaintiff's supervisor for most of the time during which she was employed by Sharp as a supply clerk was Alberta Follett, who was the supervisor responsible for overseeing Sharp's operations at the Hospital and Clinic. *Id.*, at 44:14–45:2; Humes Dep., at 34:17–24.

Ms. Washington's duties as a supply clerk required her to spend four hours of the work day at the linen room at the Hospital and four hours at the Clinic, which is at a location separate from the Hospital. Ms. Washington asserts that, during the relevant time period, she was the only supply clerk employed by Sharp working at those two locations. Washington Dep., at 45:11–15. Plaintiff's responsibilities as a supply clerk included stocking linen and other washable items, such as privacy curtains, scrubs, and towels, to all parts of the Hospital and the Clinic. Ms. Washington handled bundles of linen sheets, which consisted of fifteen to twenty sheets bundled together with plastic wrap. Plaintiff testified that her job as a supply clerk required her to lift these linen bundles, which weighed in excess of thirty pounds, despite her back injury. *Id.*, at 45:16–18.[2] Plaintiff alleges that perform-

---

1. In her opposition to the Defendant's motion for summary judgment, Plaintiff also claims that diabetes is a "medical condition[ ] that affect[s] her major life activities." Dkt. No. 10, at 1. The Complaint, however, contains no allegation that the Plaintiff was disabled because of her diabetes or that the Defendant discriminated against the Plaintiff based upon her condition as a diabetic. Indeed, Plaintiff testified that her diabetes did not in any way restrict her job performance at Sharp and

that her back injury was the only disability she had while with Sharp. Washington Dep., at 37:11–21; 38:4–8.

2. Defendant argues that the Plaintiff admitted in deposition that her job as a supply clerk did not, in fact, require her to lift bundles of linen. Plaintiff testified that for every department at the Hospital, except for the operating room ("O.R."), she was permitted to stock linen shelves by unbundling the sheets and

ing the duties of supply clerk, which involved lifting linen bundles, aggravated her back condition and caused her considerable pain and discomfort.

In or about October 1996, shortly after Ms. Follett became Plaintiff's supervisor, Ms. Washington met with Ms. Follett to discuss the demands of her job and her medical condition. Washington Aff., ¶ 5. Plaintiff requested that Sharp make reasonable accommodations for the lifting limitation placed on her due to her back injury. *Id.* Ms. Washington testified that it was during this October 1996 meeting that Ms. Follett first refused her request for reasonable accommodation. Washington Dep., at 61:23–62:10. Plaintiff avers that from October 1996 through June 1997, Ms. Follett repeatedly and consistently refused to consider Plaintiff's requests for accommodation. Washington Aff., at ¶ 6. The date of Sharp's initial denial of Plaintiff's requests for accommodation, as well as its alleged denials of her subsequent requests, also are reflected in the allegations contained in Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") on September 9, 1997, in which Plaintiff stated that, "[f]rom in or around late October 1996 and continuing to my date of termination, [Sharp] refused to accommodate me, despite my repeated requests." Dkt. No. 7, Ex. 5.

Plaintiff avers that Ms. Follett never discussed with her the options that may have been available to reasonably accommodate her claimed disability. Washington Aff., ¶ 8. Ms. Washington's affidavit submitted in support of her opposition to Defendant's motion for summary judgment indicates that she believes that reassignment to a word processing position would have been a reasonable accommodation. *Id.*, ¶¶ 7–8. Plaintiff asserts that while Sharp transferred at least one other supply clerk who had difficulty with that position's lifting requirements to a word processing position, Ms. Follett never considered such an accommodation in Plaintiff's case. *Id.*

In addition to the lifting requirements associated with the supply clerk position, Plaintiff objected to the increased workload and time pressures associated with being required to split her work day between the Hospital and the Clinic. Ms. Washington requested that Ms. Follett permit her to work a full eight-hour shift at the Hospital because, in Plaintiff's view, her duties at the Hospital could not be fulfilled in a four-hour day. Moreover, Plaintiff believed that the Hospital linen room was understaffed, an issue she also raised with Ms. Follett. Ms. Washington asserts that in the face of Ms. Follett's intransigence with respect to these staffing requests, she went directly to Navy personnel seeking assistance. *Id.*, ¶ 6. In response to Plaintiff's entreaties to the Navy, she was permitted to work full days at the Hospital during certain days of the week[3] and she was assigned a Navy enlist-

placing them sheet by sheet on the shelves. Washington Dep., at 51:8–14. For sanitary reasons, Plaintiff was not permitted to unbundle the linen designated for use in the O.R. With respect to the O.R. linen, Plaintiff was responsible only for delivering the linen to the O.R. and transferring the linen bundles to a separate cart at the O.R. Plaintiff testified that she was not responsible for stocking the O.R. shelves. *Id.*, at 49:12–50:18. Therefore, it is not clear from Plaintiff's testimony whether or not her position as a supply clerk actually required her to lift linen bundles that weighed in excess of thirty pounds. For purposes of resolving Defendant's motion, however, the Court shall assume that the linen bundles weighed in excess of Plaintiff's lifting restriction of thirty pounds and that, to perform fully her duties as a supply clerk, it was necessary for Plaintiff to lift those bundles.

**3.** It is unclear from the record whether it was the Navy or Ms. Follett who decided to permit Plaintiff to work some full days at the Hospital. *Compare* Washington Dep., at 57:4–6 *with* Washington Aff., ¶ 6. The record is also ambiguous as to whether Ms. Washington was permitted to work full, eight-hour shifts at the Hospital twice or three times per week. *Id.*

ed man as an assistant.[4]

On July 16, 1997, Plaintiff resigned from Sharp claiming to have been constructively discharged as a result of Defendant's refusal to accommodate her disability. Sharp's contract at Sigonella terminated on September 30, 1997, two and one-half months after Ms. Washington's resignation. As of that date, Sharp ceased operations at Sigonella.

The parties agree that Plaintiff filed a Charge of Discrimination with the EEOC on September 9, 1997, alleging employment discrimination based on disability against Sharp. The Charge of Discrimination is stamped "received" by the EEOC on September 19, 1997. Dkt. No. 7, Ex. 5. Plaintiff alleges that she received a Notice of Right to Sue letter from the EEOC on May 3, 1999. Compl., ¶ 2. On August 2, 1999, Plaintiff filed this suit in district court in the District of Maryland. Defendant moved to dismiss the Complaint, arguing that Maryland was an improper venue. Dkt. No. 8. On May 11, 2000, a consent order was entered transferring this matter to the Eastern District of Virginia, where it was filed on May 18, 2000.

## II. Discussion

Defendant moves pursuant to Rule 56(c) for summary judgment in its favor on the following grounds. First, Defendant argues that Ms. Washington has failed to establish that, while employed by Sharp, she was disabled within the meaning of that term under the ADA. Second, Defendant asserts that Plaintiff's ADA claim is time barred. Finally, the Defendant submits that Sharp did not discriminate against the Plaintiff in violation of the ADA because the accommodations that Plaintiff requested either were unrelated to her disability or were unreasonable.

---

4. Plaintiff makes two additional allegations. First, she alleges that the Defendant failed to develop, and refused to provide her with, a job description setting forth her responsibilities as a supply clerk Dkt. No. 10, at 3; Compl. ¶ 16. Second, in her affidavit filed in response to the Defendant's summary judg-

## A. Summary Judgment Standard

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). The burden is on the moving party to establish that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In evaluating a motion for summary judgment, the Court must "view[ ] the record as a whole and in the light most favorable to the nonmoving party." *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir.1996). When the moving party has carried its burden under Rule 56, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In other words "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## B. Disability Under the ADA

■ Title I of the ADA prohibits discrimination by certain private employers against qualified individuals with a disability. Specifically, the ADA provides that no covered employer "shall discriminate against a qualified individual with a dis-

---

ment motion, Plaintiff asserts that the Defendant never advised her of her rights under the ADA and never provided her with information concerning the procedure for registering discrimination complaints. Washington Aff., ¶¶ 13–14.

ability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.*, at § 12111(8). To establish a violation of the ADA, a plaintiff must prove the following elements: (1) that she has a disability; (2) that she is otherwise qualified for the employment or benefit in question; and (3) that she was excluded from the employment or benefit due to discrimination solely on the basis of the disability. *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir.1999); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).

Defendant argues that Plaintiff has failed, as a matter of law, to establish that while employed by Sharp she had a disability. The statute defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Accordingly, to fall within this definition, one must have an actual disability (subsection (A)), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C))." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 478, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999). In her opposition to the Defendant's motion for summary judgment, Plaintiff maintains that she qualifies as disabled under each of these subsections.

The three elements necessary to establish a disability under the ADA are: (1) a "physical or mental impairment," (2) that "substantially limits," (3) one or more "major life activities." *Sutton*, 527 U.S. at 479, 119 S.Ct. 2139. The EEOC has promulgated regulations defining each of these elements. First, a physical impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more" of various body systems. 29 C.F.R. § 1630.2(h)(1). Second, "substantially limits" means "[u]nable to perform a major life activity that an average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.*, at § 1630.2(j)(1). Factors to be considered in determining whether an individual is substantially limited are "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.*, at § 1630.2(j)(2). Finally, "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*, at § 1630.2(i).

Plaintiff's claimed physical impairment is the back injury she sustained during an automobile accident in 1993. Plaintiff claims that the thirty-pound lifting restriction placed on her by her chiropractor as a result of this back injury has significantly restricted the major life activities of lifting and working.[5]

---

5. Pursuant to an affidavit attached to Plaintiff's opposition brief, Ms. Washington avers that "[s]ince 1993, following an automobile accident, I have experienced a back injury that affects several of my major life activities, including walking, caring for myself, sleeping,

bending and working." Washington Aff., ¶ 3. Aside from this statement, Plaintiff has offered evidence only with respect to the impairment of her ability to lift and work. Plaintiff's statement in her affidavit does not create a material issue of fact with respect to

Where, as here, the major life activity under consideration is that of working, "the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. Reflecting this requirement, the EEOC has promulgated a specialized definition of the term "substantially limits" when referring to the major life activity of working:

> With respect to the major life activity of working—[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working.*

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added). Further, the EEOC identifies several factors courts should consider in determining whether an impairment substantially limits an individual's ability to perform the major life activity of working, including "[t]he geographical area to which the individual has reasonable access," the specific class of jobs within that geographical area from which the individual is disqualified because of the impairment, and any broad range of jobs in various classes, also within that geographical area, from which the individual is disqualified due to the impairment. *Id.,* at § 1630.2(j)(3)(ii)(A)-(C).

■ The Court finds that Plaintiff does not qualify as disabled under the ADA due to her back injury. The Fourth Circuit has held, "as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity."

*Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996). *See Aucutt v. Six Flags Over Mid–America,* 85 F.3d 1311, 1319 (8th Cir.1996) (twenty-five pound lifting restriction, among other things, failed to present sufficient evidence to establish a substantial limitation in the major life activity of working). The Court finds that *Williams* is controlling on the issue of disability. Indeed, Plaintiff's claimed thirty-pound lifting limitation is an even less substantial restriction on her ability to work than the limitation expressly rejected in *Williams.*

Citing a recent district court opinion, Plaintiff argues that there is an exception to the rule expressed in *Williams* whereby "an employee engaged in manual labor who regularly and routinely engages in heavy and medium labor might qualify as 'disabled' by a permanent medical restriction against bending over or lifting more than 25 pounds." *Fitch v. Solipsys Corp.,* 94 F.Supp.2d 670, 676 (D.Md.2000). Plaintiff maintains, therefore, that despite the holding of *Williams,* she qualifies as disabled.

The Court finds that the Fourth Circuit's ruling in *Williams* is dispositive on the issue of whether Ms. Washington is disabled under the ADA. First, the above-quoted language in *Fitch* is merely *dictum.* The actual holding of *Fitch* is that the defendant in that case was entitled to summary judgment because, under the controlling authority of *Williams,* the plaintiff's claimed forty-pound lifting restriction failed to establish that he was disabled under the ADA. Second, and more importantly, *Williams* does not contain the qualification that Plaintiff suggests. Indeed, the case from the Northern District of Georgia that *Fitch* cited for the possibility that employees engaged in heavy and medium labor are excepted

whether major life activities other than lifting and working are substantially limited by her back injury because the statement only asserts that these other life activities have been "affected," as opposed to substantially limited,

by her back injury. Further, there is no other evidence in the record from which a reasonable trier of fact could infer that Plaintiff's back injury has substantially limited her ability to walk, care for herself, sleep, or bend.

from the holding of *Williams* found it necessary to expressly reject *Williams* and the other Courts of Appeals cases holding that persons subject to certain lifting limitations are not, as a matter of law, disabled. *See Frix v. Florida Tile Indus., Inc.*, 970 F.Supp. 1027, 1034 (N.D.Ga. 1997). This Court, however, finds that *Williams* is controlling and declines to recognize the exception proposed by Plaintiff.

Further, even assuming that Plaintiff's back injury impaired her ability to perform as a supply clerk, Ms. Washington fails to qualify as disabled for the additional reason that she has not demonstrated that she is unable to work in a broad class of jobs. *See Sutton*, 527 U.S. at 492, 119 S.Ct. 2139. A "broad range of jobs" includes "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(C); *EEOC v. Browning Ferris, Inc.*, 2000 WL 1039469, *2 (4th Cir. July 28, 2000). "The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 C.F.R. § 1630.2; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir.1997) ("when the major life activity at issue is working, the inability to perform a particular job does not constitute a substantial limitation").

Plaintiff has offered no evidence showing that her back injury would have prevented her from gaining other employment in the relevant job market. *See Corrigan v. Perry*, 961 F.Supp. 132, 136 (E.D.Va. 1997) (defendant entitled to summary judgment where plaintiff "has failed to produce any evidence addressing the extent of the job market from which his back problems disqualify him, the geographical area to which he has reasonable access, or his own employment experience and expectations"); *Sutton*, 527 U.S. at 493, 119 S.Ct. 2139 ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice"). On the contrary, the primary accommodation Plaintiff sought from Sharp was a transfer to a word processing position. Although Sharp refused such a reassignment, Plaintiff has made no showing with respect to availability of word processing or other clerical jobs in the Sigonella job market as a whole—jobs which, Plaintiff admits, she would have had no difficulty performing despite her back injury. Therefore, Plaintiff has failed to demonstrate that she suffers from an impairment that substantially limits her ability to work.

Plaintiff also argues that, even if she is deemed not to suffer from an actual disability, she nevertheless is disabled under the ADA because she has a record of impairment and because Sharp regarded her as impaired. *See* 29 C.F.R. § 12102(2)(B)-(C). These arguments, however, are without merit.

Plaintiff asserts that the annotation Ms. Strumfa made on Plaintiff's interview form concerning her thirty-pound lifting restriction constitutes a record of impairment. Plaintiff also argues that because Sharp knew of the limitation on the quantity of weight she was capable of lifting and viewed the limitation negatively, Sharp regarded her as disabled. Both arguments fail to establish that Ms. Washington is disabled under the ADA. For the reasons discussed above, Plaintiff's lifting restriction related to her back injury is not a disability because it does not substantially limit her in the major life activity of working. Therefore, Plaintiff has failed to establish that she is disabled, whether the theory she proceeds under is that she suffers from an actual impairment, that she has a record of impairment, or that she was regarded by Sharp as being impaired.

Accordingly, the Court hereby **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's claim under the ADA in its entirety.

## C. Time Bar Under the ADA

Although the Plaintiff is not disabled and not entitled to relief under the ADA, the Court nevertheless shall address the issue of time bar raised by the Defendant. Sharp argues that Plaintiff's entire ADA claim is barred because she failed to file a charge of discrimination with the EEOC within 180 days after she first became aware that Sharp was unwilling to accommodate the lifting restriction placed upon Plaintiff by her back injury. Plaintiff's initial request for accommodation was made in October 1996. Plaintiff alleges that between that time and her resignation from Sharp on July 16, 1997, she made repeated requests for accommodation, all of which Sharp refused. Plaintiff filed a charge of discrimination with the EEOC on September 9, 1997, which was stamped received by the EEOC on September 19, 1997.

■ The ADA expressly adopts and incorporates the "powers, remedies, and procedures" set forth under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a). Among these adopted procedures is the requirement that a charge of discrimination be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). Under circumstances in which "the person aggrieved has initially instituted proceedings with a State or local agency," however, that person has 300 days in which to file a charge of discrimination with the EEOC. *Id.* Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but is a requirement akin to a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). "[T]he burden of proving that the limitations period has been satisfied falls on the plaintiff once the issue has been appropriately raised by the defendant." *Williams v. Enterprise Leasing Co. of Norfolk/Richmond,* 911 F.Supp. 988, 993 (E.D.Va.1995).

■ As an initial matter, the Court finds that the 180–day period applies to Ms. Washington's discrimination charges, rather than the 300–day period. The 300–day period under 42 U.S.C. § 2000e–5(e)(1) would apply only if the Plaintiff initially had charged Sharp with disability discrimination before a state or local agency. Plaintiff does not allege, and has offered no evidence to suggest, that she initially instituted proceedings before a state or local agency. Nor is there any indication that Ms. Washington's charge of discrimination was filed in a "deferral" state or was automatically or otherwise referred to a state or local agency. *See Bolt v. Norfolk Southern Corp.,* 22 F.Supp.2d 512, 515–16 (E.D.Va.1997). On the contrary, it appears that Ms. Washington's charge of discrimination was filed with an EEOC officer on the Sigonella military installation in Italy. Therefore, there existed no state deferral agency before which Plaintiff could have brought initially her charge of discrimination, and the 180–day filing period applies to her ADA claim.

Defendant's argument that Plaintiff's entire ADA claim is barred because she did not file a charge of discrimination within 180 days of when she first learned that Sharp would not accommodate her alleged disability is without merit. There is no question that Ms. Washington alleges that Sharp first discriminated against her on the basis of her disability sometime in October 1996. Plaintiff, however, alleges that Sharp committed separate and additional violations of the ADA on several occasions after October 1996, with the latest discriminatory act occurring on July 16, 1997, when Plaintiff claims Sharp constructively discharged her. *See* Dkt. No. 7, Ex. 5. These alleged instances of discriminatory conduct, if proven, would constitute separate violations of the ADA. Therefore, at most, only the discriminatory acts that occurred prior to March 13, 1997—180 days from September 9, 1997—would be time barred. *See, e.g., Bolt,* 22 F.Supp.2d at 517 (barring only claims related to those discriminatory acts that oc-

curred prior to the limitations cut-off date); *Williams,* 911 F.Supp. at 998 (same); *Stringfield v. Christopher Newport Univ.,* 64 F.Supp.2d 593, 597 (E.D.Va. 1999) (same).[6]

Plaintiff maintains, on the other hand, that relief can be granted even for Sharp's allegedly discriminatory acts that occurred outside the 180–day limitations period because any such earlier acts are part of the Defendant's "continuing violation" of the ADA. The Fourth Circuit has held acts occurring outside Title VII's limitations period may not be time barred where the employer's "alleged discriminatory violation occurred in a series of separate but related acts." *Jenkins v. Home Ins. Co.,* 635 F.2d 310, 312 (4th Cir.1980). Further, "in order to apply [the continuing violation] theory ... there must be a 'present violation' within the required time period." *Hill v. AT & T Tech., Inc.,* 731 F.2d 175, 180 (4th Cir.1984), *citing Woodard v. Lehman,* 717 F.2d 909, 914–15 (4th Cir.1983). As discussed above, by accusing Sharp of repeatedly refusing accommodation, Plaintiff has alleged that Sharp committed present ADA violations within the 180–day period.

■ The three factors to be considered in determining whether application of the continuing violation doctrine is appropriate are: "(1) whether the alleged acts involve the same type of discrimination; (2) whether the alleged acts are frequent; and (3) whether the alleged acts have a degree of permanence which would trigger an employee's awareness and duty to assert his or her rights." *Williams,* 911 F.Supp. at 996, *citing Berry v. Board of Supervisors of La. State Univ.,* 715 F.2d 971 (5th Cir. 1983). "The first two factors amount to a prerequisite that the defendant's alleged actions constituted a pattern or practice of discrimination." *Demuren v. Old Dominion Univ.,* 33 F.Supp.2d 469, 478 (E.D.Va.

1999). The third prong, however, is the most critical to the continuing violation analysis. It requires that "where a plaintiff claims that allegedly discriminatory events outside of the relevant Title VII statutory period are part of a 'continuing violation,' plaintiff must at the very least show that he or she failed to perceive the alleged discriminatory animus causing the claimed injury prior to the statutory period, and that such recognition would not reasonably have occurred until a point in time within the statutory period." *Williams,* 911 F.Supp. at 997; *Demuren,* 33 F.Supp.2d at 478.

■ Although Plaintiff alleges a pattern or practice of discrimination based upon her purported disability, she has not established that she "lacked notice of the defendant's discriminatory intent such that the plaintiff would not have been expected to have brought a claim closer in proximity to the discriminatory incidents." *Demuren,* 33 F.Supp.2d at 478. Ms. Washington testified in deposition that Ms. Follett first rejected Plaintiff's request that her back injury be accommodated in October 1996. Therefore, this is not a case "where 'discriminatory animus' is hidden and the plaintiff must figure out its existence based on a series of adverse employment actions." *Bolt,* 22 F.Supp.2d at 518.

Accordingly, the Court hereby and additionally **GRANTS** Defendant's request for summary judgment with respect to any alleged ADA violations that occurred prior to March 13, 1997, on the grounds that claims related to any such acts are time barred under 42 U.S.C.2000e–5(e)(1).

## D. Plaintiff's Requested Accommodations

Although the third issue upon which the Defendant requests summary judgment is ambiguous, Sharp appears to argue that, as a matter of law, it cannot be liable for

---

6. Defendant argues that permitting repeated refusals to accommodate an employee's disability to constitute fresh acts of discrimination would render the 180–day filing requirement a nullity. Defendant, however, offers no support for the argument that repeated acts of

discrimination falling within the statutory period are unactionable because the initial act of discrimination falls outside that period. The cases cited above demonstrate no such rule exists under 42 U.S.C. § 2000e–5(e)(1).

discrimination against the Plaintiff in violation of the ADA because Plaintiff's requested accommodations were either irrelevant to her claimed disability or were unreasonable. Sharp asserts that the three accommodations Ms. Washington requested were: (1) provision of a written job description concerning her duties as a linen clerk; (2) permission to work a full eight-hour day at the Hospital as opposed to splitting time between the Hospital and the Clinic; and (3) provision of an assistant to aid Plaintiff in completing her responsibilities as a linen clerk. Absent from Defendant's list, however, is Plaintiff's primary requested accommodation, which was to be transferred to a word processing or similar position.

A form of discrimination prohibited under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the covered employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). The Court has determined that Plaintiff fails to qualify as disabled under the ADA. For this reason, the Court finds that it is not necessary to address the issue of whether the Defendant satisfied its duty under the ADA to provide reasonable accommodation to disabled employees except under circumstances in which doing so would place an undue burden on the Defendant's business.

### III.   Conclusion

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

The Clerk is **REQUESTED** to send copies of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**