**Kenneth John SCOTT**

v.

**MONTGOMERY COUNTY GOVERNMENT**

**No. CIV.A. DKC 2000–0091.**

United States District Court,
D. Maryland.

Aug. 30, 2001.

Lynne K. Zusman, Lynne K. Zusman & Associates, Washington, DC, for plaintiff.

Joann Robertson, Sharon V. Burrell, County Attorney's Office, Rockville, MD, for defendants.

**MEMORANDUM OPINION**

CHASANOW, District Judge.

Plaintiff, Kenneth John Scott, has filed an action against the Montgomery County Government alleging discriminatory treatment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Presently pending before this court is Montgomery County's motion for summary judgment. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the following reasons, the court shall GRANT Defendant's motion.

## I. Background

Plaintiff Kenneth Scott was employed beginning in 1974 by Montgomery County, Maryland. From November 1981 until January 1999, Scott was employed by Defendant Montgomery County's Department of Liquor Control as a part-time Messenger/Clerk, grade 7. Scott's duties included driving between County liquor stores and other County offices on a courier route to deliver various items, including inter-office mail and alcoholic beverages. In the winter of early 1998 Scott began experiencing drowsiness while driving his vehicle. In early May 1998 Scott was diagnosed with sleep apnea. On May 18, 1998, Scott was placed on light duty by his supervisor, Frank Orifici, following an exam by the County Medical Examiner, Dr. Gawin Flynn, who determined he was not able to drive in a safe manner for the County. While he was on light duty, Scott was given a driver who drove him on his courier route.

During this time, Scott pursued different treatments for his sleep apnea. He was given the option of pursuing treatment with either a C–Pap mask worn during sleep or an uvulopalatopharyngeoplasty, a surgical procedure which has a 50–75% chance of success. On June 20, 1998, Dr.

Alfred Munzer confirmed Scott has obstructive sleep apnea which causes him to develop somnolence after driving or working for an extended period of time. Def. Ex. 8, Letter from Dr. Munzer to Dr. Cromwell of 6/20/98. Due to the fact that Scott suffers from claustrophobia, treatment with the mask was unsuccessful, after which Scott then pursued surgery. However, his insurance company refused to pay for the operation until they were satisfied that treatment with the mask was unsuccessful. Authorization for the surgery was approved after Scott had been terminated by Montgomery County.

On January 13, 1999, Scott's employment as a messenger-clerk, grade 7, with Montgomery County's Department of Liquor Control was terminated because he was not able to perform one of the essential functions of his job—driving. On May 24, 1999 Scott filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), which the EEOC did not pursue. A right to sue letter was issued by the EEOC on October 15, 1999 and Scott filed his complaint on January 11, 2000 in a timely manner.

## II. Summary Judgment Standard

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv.*

*Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex*, the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "spe-

cific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

Scott asserts that he fits the definition of a qualified person within the meaning of the ADA, and, moreover, that his disability was the motivating factor in terminating his employment.

■ To establish a violation of the ADA, Scott must show that 1)he has a disability; 2) he is qualified for the position; and 3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability. *Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 348 (4th Cir.1996). Scott is unable to meet the second prong of this test.

■ Scott asserts disabled status because he is unable to stay awake at certain unpredictable times, as a result of his sleep apnea. The County does not dispute that he is disabled. Disability is defined by the ADA as a "physical and mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). "A disability exists [if] an impairment substantially limits a major life activity." *Sutton v.*

*United Airlines,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450, (1999). "To be substantially limited in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. Sleep apnea is a condition that precludes an individual from more than one type of job. Scott stated that the somnolence "didn't come at any specific time.... There was no real timeframe.... I noticed it all the time, the weekends, night time, daytime, it didn't matter." Def.'s Ex. 1, Dep. of Scott at 27. Since Scott may fall asleep at anytime with very little warning, a whole range of jobs at his skill level is unavailable to him. It is obvious that Scott can not hold a position that requires operation of heavy machinery or driving of any sort. Therefore, Scott qualifies as a disabled individual under the first prong of the ADA test set forth in *Williams.*

■ In addition, even if this is not an actual disability, Scott's condition meets the first prong of the *Williams* test because he is regarded as disabled by his supervisors and other Montgomery County employees. 42 U.S.C. 12102(2)(C). Scott was determined to be disabled by the Montgomery County Medical Examiner, Dr. Flynn, on May 18, 1998 and placed on light duty due to his "sleep problem". Def. Ex. 3, Montgomery County Health Status Report, 5/18/98. Light duty is a status reserved for County employees who are suffering from a permanent or temporary disability. Scott was placed on light duty because his condition impaired him from performing one of the essential functions of his job, namely driving. In addition, Scott's supervisors, Frank Orifici and Betty Ann Williams, referred to Scott as disabled. In a letter from Orifici to Scott dated August 17, 1998, Orifici advised Scott that he should apply for Disability

Retirement, indicating Scott was perceived as disabled within the Montgomery County Liquor Control Board. Scott has clearly presented evidence that Montgomery County regarded his impairment as substantially limiting a major life activity, working.

■■ However, Scott is unable to meet the second prong of the ADA test set forth in *Williams,* requiring that he prove that he is "otherwise qualified for the employment or benefit in question." *Williams,* 101 F.3d at 348. "Even if an individual demonstrates that [h]e is disabled, the ADA requires [him] to establish that, 'with or without reasonable accommodation, he can perform the essential functions of the employment position that he holds ....'" *Williams,* 101 F.3d at 349 (citing 42 U.S.C. § 12111(8)). *Williams* holds that the "determination of reasonableness is an objective analysis" guided by the governing statute. *Williams,* 101 F.3d at 350. The ADA defines "reasonable accommodation" to include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B).

■ There is no reasonable accommodation that will permit Scott to continue in the position of Messenger–Clerk, Grade 7, since one of the essential functions of the position according to both Scott and Montgomery County is driving and he is not permitted to drive due to his sleep apnea. Therefore job restructuring to eliminate the driving requirement is not possible. The only modification that would be possible would be to have Scott driven on his route, as he was while on light duty. Scott's driver was a temporary accommodation while on light duty and is not a permanent solution to the problem that Scott can not perform an essential function of the messenger-clerk position. Montgomery County is not under an "obligation

to 'accommodate' him by assigning him to permanent light duty." *Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987).

■ A part-time or modified schedule is also not possible since the stores are only open certain hours and the courier route must take place when stores are open. Scott stated that the somnolence _was unpredictable and was unaffected by how much sleep Scott had gotten the previous night. "Instead of sleeping for say six hours, I'd sleep for eight. Or, instead of getting to bed at like eleven, I'd try to get to bed by nine. And, nothing worked and I was still fatigued." Defendant's Exhibit 1, Deposition of Scott at 14. Therefore, a part-time schedule would not reduce the risk that Scott would experience somnolence while driving, an essential function of the position.

■ Plaintiff argues that accommodations for his condition should have been made through reassignment and the County's failure to reassign demonstrates that they failed to accommodate his disability reasonably. Reassignment "does not require an employer to abandon a legitimate and non-discriminatory ... policy." *EEOC v. Sara Lee Corp.,* 237 F.3d 349, 353–54 (4th Cir.2001) (internal citations omitted). Scott argues that he "should have been given priority over nondisabled applicants for any vacant positions for which he was qualified." Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 39. When Scott was diagnosed with sleep apnea and placed on light duty in May 1998, he was referred to Brenda Williams, then the Disability Program Manager. Ms. Williams stated in her deposition that she reviewed the bi-weekly employment bulletin looking for positions Scott was qualified for at his grade level (7) or below. She indicates she found a position Scott would be qualified for on September 23, 1998, but it was less

desirable because it did not include benefits, which Scott indicated he required. Due to Scott's low skill and education level, finding a reassignment for him at or below his grade level, as required by the Collective Bargaining Agreement (CBA), was extremely difficult. Brenda Williams stated that there were "not a lot of opportunities for him [at a] lower [grade], because below a 7 is a 6, which is a ... maintenance man, and below that is a Grade 5, and that is all.... So there were no options for him, really, below or above [his grade level]." Def.'s Ex. 23, Dep. of Brenda Williams at 127.

Scott argues he should have been eligible for priority consideration for jobs he feels he is qualified for at higher grade levels. Even if Scott is qualified to perform these jobs, the CBA only requires that he be given priority for those positions at his grade level or lower. The CBA clearly states that "all qualified employees with disabilities in need of reassignment" have the right "to be considered for vacancies at or below the grade level they hold." Def.'s Ex. 24, Appendix II to Collective Bargaining Agreement, Reasonable Accommodation. Scott asserts that he should have been given priority consideration for jobs he feels he is qualified for, including jobs at County Libraries. Pl.'s Ex. 1, Scott Aff. ¶ 9. The library clerk positions Scott refers to are grade 12 positions, five levels above his current grade 7. The Fourth Circuit has held that "[t]he ADA does not require employers to disrupt the operation of a defensible and nondiscriminatory ... policy in order to provide a reasonable accommodation." *Sara Lee*, 237 F.3d at 355. Further, the EEOC itself has stated that "if [the] policy [is] part of a collective bargaining agreement, granting an exception ... would not be a reasonable accommodation." *Id.; see also Carter v. Tisch,* 822 F.2d 465, 467–68 (4th Cir.1987); *Daubert v. USPS,* 733 F.2d

1367, 1370 (10th Cir.1984). The policy set forth in the Montgomery County CBA restricting priority consideration for positions at or below current grade level is reasonable and, therefore, Montgomery County has satisfied its duty of reasonable accommodation under the ADA.

▆▆▆▆ Scott alleges that there is an issue of material fact regarding whether or not Montgomery County failed to act in good faith in pursuing an interactive process to identify reasonable accommodations for Scott. No issue of material fact exists since Montgomery County acted in good faith and "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Walter v. United Airlines,* 2000 WL 1587489, *4 (4th Cir.2000). In order for Scott to succeed he must not only allege that Montgomery County failed to engage in the interactive process to find reasonable accommodation, but that their failure to engage "resulted in the failure to identify an appropriate accommodation for [Scott]." *Id.* Taking the facts in the light most favorable to Scott, the record clearly establishes that Montgomery County acted in good faith. As previously stated, Scott was placed on light duty for six months in order to determine fully the extent of his disability. During that time Scott was provided with reasonable accommodation in his messenger-clerk position, he met with Brenda Williams, Disability Program Manager, in order to find a position to which he could be reassigned consistent with the terms of the CBA, and he was recommended for disability retirement. These accommodations, taken as a whole, discharge Montgomery County's obligation under the ADA to provide reasonable accommodations. "[T]he ADA does not require an employer to provide the specific accommodation requested ..., or even to

provide the best accommodation, so long as the accommodation … is reasonable." *Id.* The accommodations provided by the County were reasonable and, therefore, meet the good faith standard of the claim of reasonable accommodation. Therefore the "alleged failure to engage in an interactive process is of no consequence." *Id.*

Accordingly, Montgomery County's motion for summary judgment on Scott's ADA claim will be granted because he is unable to prove that he is qualified for the employment in question within the meaning of the ADA.

## IV. Conclusion

For the foregoing reasons, the court shall grant Montgomery County's motion for summary judgment.